IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUZ CELENIA ROJAS, ET AL.**, <br><br>  Plaintiffs, <br><br>       v. <br><br> **PUERTO RICO CVS PHARMACY, LLC, ET AL.**, <br><br>  Defendants. | **CIVIL NO. 19-1260 (PAD)** |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

This is an action for specific performance and damages arising out of a failed real estate transaction. To this end, plaintiffs allege that defendants breached a purchase agreement by which CVS was bound to purchase plaintiffs' property – as well as various other contiguous properties – in order to eventually build a CVS pharmacy therein (Docket Nos. 29, at pp. 10-11; 56). In the alternative, they state that defendants are liable under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code of 1930, P.R. Laws Ann. tit. 31, § 5141, due to what they characterize as "negligent and/or intentional (bad faith) conduct." Id. at 12.[1] Before the court is defendants' "Amended Motion for Summary Judgment" (Docket No. 47), which plaintiffs opposed (Docket No. 56).

In Civil Nos. 19-1287 (WGY), 19-1288 (WGY), 19-1289 (WGY), and 19-1776 (WGY), Judge William G. Young evaluated and granted summary judgment dismissing claims analogous to the ones here, in consolidated cases filed in this District by owners of other contiguous properties

---

[1] As the relevant events took place prior to November 28, 2020, the date on which the Puerto Rico Civil Code of 2020 became effective, they are subject to the Puerto Rico Civil Code of 1930, as amended, P.R. Laws Ann. tit. 31.

mentioned above (the "Consolidated Action") (Docket No. 47-1). Considering the almost identical factual and legal nature of this case and the Consolidated Action, as well as the legal analysis expounded by the sister court, a similar conclusion follows in the instant case.[2] In consequence, defendants' motion must be granted, and the case dismissed.

## I. PROCEDURAL BACKGROUND

On March 21, 2019, plaintiffs filed the Complaint (Docket No. 1). On June 27, 2019, defendants answered the Complaint (Docket No. 5). On February 11, 2020, plaintiffs filed an Amended Complaint (Docket No. 22). On March 2, 2020, defendants answered the Amended Complaint (Docket No. 24). On July 29, 2020, plaintiffs filed a Second Amended Complaint (Docket No. 29). On August 19, 2020, defendants answered the Second Amended Complaint (Docket No. 31). Following discovery, on September 10, 2021, defendants moved for summary judgment (Docket No. 47), which plaintiffs opposed on January 25, 2022 (Docket No. 56). On February 18, 2022, defendants replied (Docket No. 63). On March 8, 2022, plaintiffs sur-replied (Docket No. 68).

## II. DISCUSSION

As Judge Young aptly observed, these cases prove "that commercial real estate transactions are inherently risky ventures" (Docket No. 47-1, p. 4). Had all gone according to plan, CPC Carolina PR, LLC ("CPC Carolina") was to acquire certain contiguous pieces of property, including parcels from the sellers, aggregate the properties, and lease the aggregated property to Puerto Rico CVS Pharmacy, LLC, which would then construct and operate a pharmacy. Id. The deal fell through,

---

[2] There are minor differences which are inconsequential for the disposition of this case. Namely, plaintiffs herein are different than those in the Consolidated Action. Additionally, while the purchase agreements at issue in this case and in the Consolidated Action are identical almost word-by-word, the agreed price for each property varies. Nonetheless, all material and operative factual and legal points on which Judge Young's opinion is based are equally applicable.

and plaintiffs sued Puerto Rico CVS Pharmacy, CVS Pharmacy, Inc., and other CVS entities (collectively, "CVS"), for damages under two legal theories, breach of contract and tort.

First, no entity can breach a contract it is not a party to, and CVS had no contractual relationship with plaintiffs. The contract was between the lead plaintiff – Luz Celenia Rojas Andino – and KRB Universal Investments ("KRB"), later assigned to CPC Carolina, not CVS. The contract designates KRB as purchaser and is signed by Felipe Arcilla as "Managing Member" of KRB (Docket No. 48-2, p. 19). The contract was amended six times (Docket No. 48-3; Docket No. 48-4; Docket No. 48-5; Docket No. 48-6; Docket No. 48-7; Docket No. 48-8). In February 2015, KRB assigned the contract to CPC Carolina (Docket No. 48-9). In all of the amendments except the last one, KRB is described as the purchaser. The assignment contract refers to KRB as the purchaser under the assigned contracts (Docket No. 48-9, p. 4). And the sixth amendment mentions CPC Carolina as successor in interest to KRB as purchaser. CVS was not a party to the sales contract, the amendments or the assignment agreement.[3]

Second, plaintiffs allege that the realtors they interacted with prior to entering into the sales contract were actual or apparent agents of CVS and their conduct and expressions can be imputed to CVS (Docket No. 56, pp. 5-6). However, there is no evidence that the realtors are or were employed by CVS or were authorized by CVS to act on its behalf. The sales contract identifies the realtors as the purchaser's brokers, not as brokers of CVS (Docket No. 48-2, p. 16). Nor have plaintiffs shown that CVS authorized those realtors, KRB or CPC Carolina to act on CVS' behalf so as to impose upon CVS any obligation to purchase plaintiffs' property under the sales contract.

---

[3] Judge Young reached the same conclusion in the Consolidated Action, noting that "there is no evidence of a contractual relationship between CVS and the Sellers" (Docket No. 47-1, p. 40).

Plaintiffs assert that Engineer Carlos Sánchez González provided architectural, civil engineering and permitting coordination services to CVS in connection with the pharmacy to be built on the property and, by extension, was an actual agent of CVS (Docket No. 57, p. 14). That Mr. Sánchez was engaged to provide those services does not make CVS a party to the sales agreement. Mr. Sánchez' authority was limited to the scope of his engagement, that is, to provide architectural, civil engineering and permitting services as to the pharmacy to be built. In fact, he admitted that he was not consulted by CVS to acquire lots, which places his services beyond the reach of any obligations imposed upon the purchasing party by virtue of the sales contract (Docket No. 57-3, p. 24).[4]

Third, even if CVS was a party to the sales contract, the damages would be limited by a liquidated damages clause in the contract. Along this line, Section 8 of the contract states that if the sale and purchase is not consummated because of the purchaser's default, the seller shall have the right to retain the earnest money and all interest earned thereon, as full liquidated damages for such default, with the seller agreeing not to sue for specific performance or for damages other than the agreed-upon liquidated damages (Docket No. 48-2, p. 6). And the contract fixes that amount at $5,000.00. Id. at 1.

These clauses are valid in Puerto Rico. See, Rochester Capital Leasing Corp. v. Williams Int. Ltd., 103 D.P.R. 163, 3 P.R. Offic. Trans. 226, 233 (1974)(addressing topic). Their two most

---

[4] Plaintiffs claim that Mr. Sánchez "approached and/or caused an approach to plaintiffs to secure an authorization for the filing of the permitting process with the Municipality of Carolina for a CVS pharmacy to be established in plaintiffs' property" (Docket No. 56, p. 6). The authorization form authorized the firm of CPH PSC, through Mr. Sánchez or any other member of the firm, to apply on the property owner's behalf for any permits or authorizations that may be required for the development of the property from any Puerto Rico or municipal agencies, and to enter the property to perform any studies, tests or surveys necessary or required for the development and construction of a commercial building on the property (Docket No. 57-4). This is consistent with the nature of Mr. Sánchez' engagement and did not make CVS a party to the sales contract.

important functions are to guarantee the performance of the obligation and to evaluate in advance the damages that may be caused to the creditor in the event of a breach. Id. at 234. As to damages, they "substitute indemnity for damages and the payment of interest in case of nonfulfillment, should there be no agreement to the contrary." P.R. Laws Ann. tit. 31, § 3131. That being the case, the clause here "eliminates all controversy" as to the amount to be paid in damages in the event of a contractual breach. F.D.I.C. v. Empresas Cerromonte Corp., 2013 WL 5346725, *13 (D.P.R. Sept. 23, 2013). That is what plaintiffs bargained for, limiting the amount they could recover in case of purchaser default to $5,000.00.[5]

Fourth, plaintiffs argue that CVS is liable in tort, having breached a general duty of care under Puerto Rico law by entering into a real estate development that, they claim, CVS should have known was doomed from the start, and thus, was negligent when it insisted that plaintiff vacate their property before the closing, knowing of the legal issues linked to a restrictive covenant that could cause the pharmacy project to be aborted and abandoned, resulting in damages (Docket No. 56, p. 9). For plaintiffs, CVS was reckless and/or negligent in not disclosing that information to them (Docket No. 68, p. 10). Also, they complain that CVS allegedly induced them to incur expenses and commercial loss by withdrawing unjustifiably from contractual negotiations and abandoning the property while in its possession and control, leading to vandalism (Docket No. 29, ¶¶ 37, 40).

As Judge Young pointed out in the Consolidated Action, the tort claim fails because plaintiffs' alleged damages flow from "the failure of the parties to close" under the agreements (Docket No. 47-1, p. 210). In other words, the damages "ultimately arise because of, and are intertwined with, the duties" set in the sales agreement. Id. at p. 24. Further, citing Ramos Lozada

---

[5] As with the plaintiffs in the Consolidated Action, plaintiffs here "do not question the validity of the liquidated damages clause" (Docket No. 47-1, p. 26).

v. Orientalist Rattan Furniture, Inc., 130 D.P.R. 712, 1992 WL 755597 (P.R. 1992), Judge Young observed that "a party may not choose whether to proceed in contract or tort when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract." Id. at 24, 26. He concluded that to entertain those tort claims, "would tend to destabilize the commercial relationships that the Agreements cover." Id. at 26. So too here.

At any rate, if as plaintiffs claim, CVS should have known about potential legal problems related to a restrictive covenant, as owners they, too, should have been fully aware of the covenant. The record does not show that CVS in any way lied to plaintiffs as to that covenant to induce them to sell the property to KRB and CPC Carolina.[6] Besides, the record shows that the actions plaintiffs predicate their tort claim on were taken by CPC or its agents, not CVS. In Judge Young's words, "there is evidence that the Sellers still expected the deal to close, but this expectation, taken in the light most favorable to the Sellers, was generated by CPC Carolina" (Docket No. 47-1, p. 36).[7] Likewise, CVS could not have abandoned plaintiffs' property, for CVS never took possession of the property. And because CVS did not engage in negotiations with plaintiffs, it cannot be found liable to them for having withdrawn from any such negotiation. Plaintiffs negotiated with KRB and CPC Carolina, not with CVS.

---

[6] In the letter of August 21, 2018, from CPC Carolina's attorney to plaintiffs' counsel, which plaintiffs attached to their sur-reply, CPC Carolina's attorney states, "[i]t must be noted that sellers such as your client entered into agreements to sell their respective properties fully conscious of the existence of certain restrictive covenants and assumed the risk that the transaction would not be approved by third parties, including tenant," that tenant being Puerto Rico CVS Pharmacy (Docket No. 68-1, p. 2).

[7] The request to vacate the property came from Loyda Rivera in a letter that explicitly states she was acting as counsel for CPC Carolina (Docket No. 48-10, p. 3). Additionally, plaintiffs believed that Ms. Rivera represented the property owners, not CPC Carolina or any other company (Docket No. 48-1, pp. 31-32).

Fifth, if a tort claim were to survive this analysis, it would be time-barred. Tort claims under Article 1802 "are subject to the one-year statute of limitations" provided for in Article 1868 (2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2). Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez & Cia., 142 F.3d 1, 3 (1st Cir. 1998). A cause of action under Article 1802 accrues – and the prescriptive period set in Article 1868(2) begins to run –when the injured party knew of should have known of the injury and of the likely identity of the tortfeasor. Id.

As Judge Young found, the sellers knew by August 25, 2017, that the deal would not go through (Docket No. 47-1, pp. 33-34). That knowledge came by way of a letter CPC Carolina sent to the sellers, informing them, among other things, that CVS "would not be granting the rental contract or accepting delivery of the property" because "it was not satisfied with the rental insurance policy its insurer had prepared for the closing, which excluded the restrictive conditions affecting the building." Id. at 34.[8] And as Judge Young recognized, "[t]here is no evidence that CVS made any indication to the Sellers that the deal was going to proceed or was somehow revived after August 25, 2017." Id. at 36-37.

Against this backdrop, the statute of limitations started running on August 25, 2017. Yet, the Complaint was filed more than one year later, on March 21, 2019 (Docket No. 1). When filed, it was already late. If the prescriptive period is successfully interrupted, "the full period begins to run again." Tokyo Marine and Fire Ins. Co., Ltd., 142 F.3d at 4. But a late claim "cannot resurrect an expired action." Santiago-Castillo v. Cayetano, 2015 WL 1918670, *3 (Apr. 28, 2015).

---

[8] Similarly, plaintiffs acknowledged that, on August 25, 2017, the sellers met to discuss the failed closing, and were informed that CVS had decided to stop the closing based on an insurance problem (Docket Nos. 48, ¶ 21; 57, ¶ 21).

Plaintiffs state that they interrupted or tolled running of the limitations period with an extrajudicial claim sent to CVS Pharmacy, Inc., on August 8, 2018 (Docket No. 56, p. 11).[9] That extrajudicial claim was ineffective, as it was not addressed to Puerto Rico CVS Pharmacy, the CVS entity involved with the property as a potential lessee. Tolling of the action against an alleged joint tortfeasor "does not toll the statute of limitations against the rest of the alleged tortfeasors." Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc., 812 F.3d 213, 217 n. 4 (1st Cir. 2016)(citing Fraguada de Bonilla v. Hospital Auxilio Mutuo, 186 D.P.R. 365, 2012 WL 3655336 (2012)). Id.

Plaintiffs mention that CVS Pharmacy, Inc., guaranteed the sale (Docket No. 29, ¶ 30). There is no evidence to that effect, or reference to any such guarantee in the sale documents. CVS Pharmacy, Inc., did appear as guarantor for rent payment and tenant performance under the Ground Agreement between Puerto Rico CVS Pharmacy and CPC Carolina (Docket No. 48-12, pp. 43, 59). Pursuant to that contract, the tenant – Puerto Rico CVS Pharmacy –would lease, not purchase the property. Thus, CVS Pharmacy did not guarantee any sale, and cannot be found liable for what it did not guarantee.

Plaintiffs state that their counsel did not learn of Puerto Rico CVS Pharmacy until August 21, 2018, when he received a copy of the Ground Lease from CPC Carolina's counsel (Docket No. 68, p. 13). Even so, plaintiffs knew or should have known of Puerto Rico CVS Pharmacy since at least 2016. Along this line, Ms. Rojas-Andino testified that, in May 2016, a "big sign" was installed next to the property announcing to the public the purchase of the property by CVS (Docket No. 57-1, p. 65). However, that sign identifies "Puerto Rico CVS Pharmacy, LLC" and not CVS Pharmacy, Inc., as the CVS entity involved in the project (Docket No. 63-1). As well, the "Examiner's Report

---

[9] Pursuant to Article 1873 of the Civil Code, a prescriptive period may be interrupted in one of three ways: by the institution of an action "before the courts, by extrajudicial claim of the creditor, and by any action of acknowledgement of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303.

Regarding Public Hearing" involving the development of the property to locate on it a CVS pharmacy, notes that Eng. Sánchez appeared on behalf of Puerto Rico CVS Pharmacy LLC (Docket No. 57-5, pp. 1, 3). And plaintiffs Romary Rodríguez Rojas attended the hearing together with her mother, the lead plaintiff Luz Celenia Rojas (Docket No. 57-6 ¶ 5). In consequence, assuming there is a viable tort action in this case, it would be time-barred.

### III.  CONCLUSION

For the reasons stated, the defendants' "Amended Motion for Summary Judgment" (Docket No. 47) is GRANTED and the case DISMISSED. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2022.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge